Roger LARAMEE, Plaintiff,

v.

FRENCH & BEAN COMPANY
and Associated Grocers of New
England, Inc., Defendants.

No. 2:91–CV–407.

United States District Court,
D. Vermont.

Aug. 27, 1993.

David J. Mullett, Cheney, Brock & Saudek, P.C., Montpelier, VT, for plaintiff.

Heather Briggs, Downs, Rachlin & Martin, P.C., Burlington, VT, Peter Bennett, Herbert H. Bennett and Associates, P.A., Portland, ME, for defendants.

## OPINION AND ORDER

PARKER, Chief Judge.

### I. *Background*

The Report and Recommendation of the Magistrate Judge was filed on March 17, 1993. (Paper 33) The defendants, French and Bean Company ("F & B") and Associated Grocers of New England, Inc. ("AGNE") timely filed an objection on March 31, 1993. (Paper 34)

The facts of this case are discussed in the Report and Recommendation and a brief discussion will serve for purposes of this opinion. Plaintiff Roger Laramee was an employee of the defendant F & B, a grocery wholesaler servicing the Vermont and New Hampshire area. Laramee was a truck driver based at F & B's St. Johnsbury, Vermont trucking facility. He also served as president of Local # 362 of the American Federation of Grain Millers, AFL–CIO ("the Local"), which represented employees of F & B.

A collective bargaining agreement ("CBA") between F & B, the Local and the national chapter of the American Federation of Grain–Millers, AFL–CIO ("the Union") governed the terms of employment for F & B employees. (Paper 22, appendix 1) Article VII of the CBA provided that "[a]n employee who has completed his probationary period shall not be disciplined or discharged *except for just cause.* Any dispute under this Section shall be expedited through the grievance procedure." (Emphasis added.) Article VIII of the CBA sets forth the grievance and arbitration procedure for resolution of any disputes between F & B and the Local and the Union. The procedure calls for a number of steps and deadlines before a dispute is submitted to arbitration. Failure to meet the time limits forfeits any right to arbitration, though a dispute may still be considered in the grievance procedure.

In April of 1990, F & B decided to close its St. Johnsbury facility. All workers at the St. Johnsbury facility were to be terminated. Laramee wrote a letter to the editor of *The Caledonia Record* which appeared in the April 18, 1990 edition. (Paper 22, appendix 5) The letter was critical of F & B, its parent corporation AGNE and the decision to terminate the drivers. In response, defendants terminated the plaintiff on April 20, 1990. It is undisputed that the plaintiff did not challenge his termination through the grievance procedure set out in the CBA. (Paper 22, appendix 3, admissions 9–11).

Nearly a month later, on May 18, 1990, F & B, the Local and the Union reached a termination agreement which guaranteed severance pay in lieu of any employment related claims against F & B for all employees who were members of the Local. (Paper 22, appendix 2)

On December 13, 1991, the plaintiff filed a complaint in the Caledonia County Superior Court, alleging that he was unjustly terminated by the defendants in contravention of "clear and compelling policy favoring plaintiff's right to exercise freedom of speech." (Paper 1) The defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. (Paper 3) Plaintiff moved for summary judgment arguing that his discharge clearly contravened a clear and compelling public policy and was therefore forbidden under *Payne v. Rozendaal,* 147 Vt. 488, 491, 520 A.2d 586 (1986). (Paper 13) Defendants responded with a cross motion for summary judgment for failure to state a claim upon which relief can be granted. (Paper 19) Defendant also asserted that summary judgment was appropriate as a matter of law because plaintiff's complaint was preempted by § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and by § 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Defendant also contended that plaintiff had failed to exhaust his contractual remedies under the

CBA and plaintiff was not an at-will employee, rendering *Payne v. Rozendaal* inapplicable.

## II. *The Report and Recommendation*

The Magistrate Judge's Report and Recommendation concluded that this Court lacked subject matter jurisdiction over the plaintiff's complaint and, therefore, removal to this Court was inappropriate. It recommended remanding the case back to the Caledonia County Superior Court without reaching the merits of either motion for summary judgment. In reaching this decision, the Report and Recommendation stated that the plaintiff's wrongful discharge claim could be resolved without

> interpreting the just cause provisions of the collective bargaining agreement. Laramee's claim is based upon Vermont common law. Under Vermont law, absent a contract to the contrary, employees may be fired with or without cause at anytime 'unless there is a *clear and compelling* public policy against the reason advanced for the discharge. *Jones v. Keough,* 137 Vt. 562, 564, 409 A.2d 581 (1979) (emphasis in original).

(Paper 33) The Magistrate Judge reasoned that a "Vermont court would have to look towards [a composite of the Vermont and Federal Constitutions, various Vermont statutes and Vermont common law] to determine whether there was 'clear and compelling public policy' against discharging Laramee for writing a letter to the editor of a local newspaper." (Paper 33) Plaintiff's complaint was therefore not preempted by the LMRA nor by ERISA and this Court was accordingly without jurisdiction.

Defendants objected to the Report and Recommendation and argued that removal to this Court was proper because plaintiff's complaint was preempted by federal law. Furthermore, summary judgment in their favor was appropriate because plaintiff had failed to exhaust his claims under the grievance and arbitration procedures of the CBA.

## III. *Discussion*

### a. Standard of review

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). The judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 227 (S.D.N.Y.1989), citing 28 U.S.C. § 636(b)(1). For the following reasons, I reject the finding that this Court is without jurisdiction and furthermore grant the defendant's motion for summary judgment.

### b. Federal preemption

█ Section 301 of the LMRA confers subject matter jurisdiction on the federal courts over suits alleging violations of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) referring to *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). In enacting § 301, Congress intended that uniform federal labor law would prevail over inconsistent local rules. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1984); *Lucas Flour Co.,* 369 U.S. at 104. As a result, disputes over the meaning to be given a contract term and the consequences of a breach of contract must be resolved according to uniform federal law. *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911.

█ When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law. *Allis–Chalmers,* 471 U.S. at 221, 105 S.Ct. at 1916; *Lingle,* 486 U.S. at 405–406, 108 S.Ct. at 1881. Likewise, where a complaint based on state law does not require interpretation of a collective bargaining agreement, § 301 does not preempt the claim. *Lingle,* 486 U.S. at 399, 108 S.Ct. at 1877. This paradigm can be best be illustrated in the context of a line spectrum. At one end are those claims which are indisputably linked to the collective bargaining agreement, i.e., a claim of unjust termination by an employee cov-

ered by a just cause collective bargaining agreement. At the other end are claims completely independent of and unrelated to the collective bargaining agreement, i.e., an employee's claim that he was assaulted by his employer. In between these two ends lies a significant gray area. A plaintiff's claims must be tested by "whether the claims exist independent of any rights established by the contract" or whether the claims are "inextricably intertwined" with consideration of the terms of the collective bargaining agreement. *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912.

### c. Wrongful Discharge

■ Laramee's single claim is that he was wrongfully terminated as a result of the publication of his letter to the editor in *The Caledonia Record.* He alleges that his discharge was "violative of public policy in Vermont which favors and protects free speech." (Paper 1)

■ Although Vermont still follows the employment-at-will rule, it has extended some protection to employees by prohibiting discharges which are in violation of a clear and compelling public policy. *Jones v. Keough,* 137 Vt. at 564, 409 A.2d 581; *Payne v. Rozendaal,* 147 Vt. at 494–95, 520 A.2d 586 (discharge of at-will employee on the basis of age discrimination prohibited by clear and compelling public policy).

That protection however is not provided to employees whose discharge is contractually protected by a just cause provision of a collective bargaining agreement. *See Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 82 (D.Conn.1991); *Paradis v. United Technolo-*

*gies,* 672 F.Supp. 67, 70 (D.Conn.1987). Laramee's employment with F & B was at all times governed by the CBA.[1] As discussed above, Article VII of the CBA provided the defendant with the right to discipline or discharge an employee for just cause. Article VIII of that agreement established a grievance procedure by which employees, like Laramee, could voice their objection to defendant's actions and request review in arbitration if they were not satisfied with the initial levels of review. Plaintiff's complaint is intimately bound with the CBA. There is no dispute as to *why* Laramee was discharged; rather, resolution of his complaint depends upon a determination of whether his discharge in response to the publication of a letter to the editor, was a just or unjust cause for termination. That is a question which was intended by defendant and Laramee, through his CBA agent, to be decided under the contract. *Franchise Tax Board of California v. Construction laborers Vacation Trust for Southern California,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). Therefore, plaintiff's claim of wrongful discharge is preempted under § 301 and this Court may properly exercise jurisdiction over his claim.

■ As discussed above, it is undisputed that plaintiff failed to seek redress through the CBA's grievance and arbitration procedures. These procedures "are among those which are to be enforced under § 301." *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to

1. Laramee contends that because a representative of the Union "picked up the books and records, funds and charters" of the Local two days prior to his discharge, (Paper 15) the union was disbanded and "[t]hus, there is no protection afforded Mr. Laramee under his union contract." (Paper 14) Accordingly, plaintiff implies that he is an at-will employee and the public policy exception to at-will employment contracts articulated in *Jones v. Keough* and *Payne v. Rozendaal* applies. Plaintiff is mistaken. By the terms of the Termination Agreement, which was negotiated and signed by F & B, the Local and the Union, the CBA was "terminated as of the close of business on May 18, 1990." (Paper 22, exhibit 2) Moreover, the Union's constitution provides

that dissolution of a Local shall not take place until 30 days after full compliance with a number of actions, including turning over the "charter, seal, books, funds, assets and all other property held or administered by the Local Union." (Paper 22 exhibit 4 (Union Constitution, Article II, Section 9, pp 9–10)). Thus, even if the Local's books and records, funds and charters were picked up by a Union official on April 18, 1990, the Local would still be in existence until at least May 18, 1990. Therefore, the plaintiff was at all times covered by the CBA and its terms and was not an at-will employee. Accordingly, the public policy exception articulated in *Jones* and *Payne* is not applicable nor does it provide grounds for a claim wholly independent of the CBA.

assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 615, 13 L.Ed.2d 580 (1965). *See also, King v. New York Telephone Co., Inc.,* 785 F.2d 31, 33 (2d Cir.1986). An employee who sidesteps the grievance machinery provided in the contract will have his independent suit against the employer in the District Court dismissed. *Hines,* 424 U.S. at 563, 96 S.Ct. at 1055.

Plaintiff made no attempt to invoke the provisions of the grievance or arbitration provisions of the CBA. This failure to utilize the grievance procedure precludes plaintiff from seeking relief in this Court. Accordingly, plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted.

## IV. *Conclusion*

Because plaintiff's complaint is preempted by § 301 of the LMRA, this Court has subject matter jurisdiction. Because plaintiff failed to utilize the grievance and arbitration procedures of the CBA, he cannot state a claim upon which relief can be granted. Therefore, the defendants motion for summary judgment (Paper 19) is GRANTED and plaintiff's complaint is DISMISSED. This case is CLOSED.